United States District Court
Southern District of Texas
**ENTERED**
August 26, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHADY IHEAKANDU IGNATIUS EMEKA, §<br>§<br>    Plaintiff, §<br>§<br>v. §<br>§<br>WELLS FARGO BANK N.A., and §<br>CARRINGTON MORTGAGE SERVICES, §<br>L.L.C., §<br>§<br>    Defendants. § | CIVIL ACTION NO. H-24-2321 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Chady Iheakandu Ignatius Emeka ("Plaintiff" or "Emeka"), brings this action against Defendants, Wells Fargo Bank, N.A. ("Wells Fargo"), and Carrington Mortgage Services, L.L.C. ("Carrington") (collectively, "Defendants"), asserting causes of action for breach of contract, promissory estoppel, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), and Regulation X of the Code of Federal Regulations, 12 C.F.R. §§ 1024.41 et seq., seeking inter alia declaratory relief pursuant to Texas Civil Practices and Remedies Code § 37.001 et seq., commonly known as the Uniform Declaratory Judgments Act ("UDJA"), a temporary restraining order and a temporary injunction preventing Defendants from foreclosing on property known as 6806 Flowermound Drive, Sugar Land, Fort Bend County, Texas, 77479 ("the

Property").[1]   Pending before the court is Defendants' Motion for Summary Judgment (Docket Entry No. 13) ("Defendants' MSJ"). Although Defendants filed the pending MSJ over three months ago on May 13, 2025, Plaintiff has not responded.  For the reasons stated below, Defendants' MSJ will be granted, and this action will be dismissed with prejudice.

## I.  Factual and Procedural Background

**A.  Undisputed Facts**

On June 13, 2006, Plaintiff's niece, Rokhaya Sene ("Sene") purchased the Property.[2]   As part of the purchase, Sene executed an Adjustable Rate Balloon Note ("Note") in the amount of $139,200.00 received from New Century Mortgage Corporation.[3]   To secure repayment of the Note, Sene  and her husband, Abdoul M. Seye ("Seye") (collectively, "Borrowers"), executed a Deed of Trust granting a security interest in the Property to New Century

---

[1]Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiff's Petition"), included in Exhibit A to Defendants' Notice of Removal, Docket Entry No. 1-1, pp. 4-19.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]See Warranty Deed with Vendor's Lien, Exhibit 1 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 20-23.

[3]Note, Exhibit A-1 to Defendants' MSJ, Docket Entry No. 13-2.

Mortgage Corporation.[4]  Defendant Wells Fargo is the Trustee for Carrington Mortgage Loan Trust Series 2006-NC4 Asset Backed Pass-Through Certificates, the current holder of the Note and beneficiary of the Deed of Trust, and Defendant Carrington is the mortgage servicer.[5]

On November 2, 2011, Sene transferred her interest in the property to Plaintiff via Special Warranty Deed filed in the Property Records of Fort Bend County, Texas, at 2020055853.[6] Plaintiff does not allege that Seye transferred his interest in the Property to Plaintiff.[7]

In March of 2012 New Century Mortgage Corporation assigned its interest in the Deed of Trust executed by Sene and Seye to Wells Fargo Bank, N.A., as Trustee for Carrington Mortgage Loan Trust, Series 2006-NC4 Asset-Backed Pass Through Certificates.[8]

---

[4]Plaintiff's Petition, Docket Entry No. 1-1, p. 6 ¶ 15.  <u>See also</u> Deed of Trust, Exhibit 2 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 24-46.

[5]Defendants' MSJ, Docket Entry No. 13, p. 1.

[6]Plaintiff's Petition, Docket Entry No. 1-1, p. 7 ¶ 18.  <u>See also</u> Special Warranty Deed, Exhibit 3 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 47-50.

[7]<u>See</u> Defendants' MSJ, Docket Entry No. 13, p. 3 n. 3.

[8]<u>See</u> Plaintiff's Petition, Docket Entry No. 1-1, p. 8 ¶ 22, and Assignment of Deed of Trust, Exhibit 6 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 69-70.

On August 6, 2018, Plaintiff filed for Chapter 13 Bankruptcy in the Southern District of Texas.[9]  On March 25, 2019, Carrington filed a Proof of Claim in Plaintiff's Bankruptcy proceedings.[10]  On May 26, 2020, the Bankruptcy Court entered an Agreed Order on Debtor's Objection to Proof of Claim and Motion for Sanctions Pursuant to Bankruptcy Rule 3002 ("Agreed Bankruptcy Order") in which Wells Fargo, as the Creditor, "agreed to reduce the monthly [principle and interest] included with the Proof of Claim filed by Creditor (Claim No. 4) for the months of August 1, 2016 through August 1, 2018 to $810.03 per month, resulting in a credit of $11,389.75."[11]  The Agreed Bankruptcy Order stated that "Creditor shall permit Debtor to submit an application for a loan modification agreement seeking to fix the interest rate of this loan at 4.25%," but warned that "[a]cceptance of the submission of

---

[9]Plaintiff's Petition, Docket Entry No. 1-1, p. 9 ¶ 26.  See also Docket Sheet for In re Iheakandu I. Emeka, Case No. 18-34322 in the United States Bankruptcy Court, Southern District of Texas, Houston Division, and Chapter 13 Standing Trustee's Final Report and Account, Exhibit 9 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 93-109.  This was Plaintiff's third bankruptcy filing in the Southern District of Texas.  See id. at 7 ¶ 21 (stating that Plaintiff filed his first bankruptcy case on December 12, 2011, Case No. 11-40743); and 8 ¶ 24 (stating that Plaintiff filed his second bankruptcy case on March 23, 2015, Case No. 15-31578).

[10]Defendants' MSJ, Docket Entry No. 13, p. 3 & n. 5.

[11]Agreed Order on Debtor's Objection to Proof of Claim and Motion for Sanctions Pursuant to Bankruptcy Rule 3002.1, Exhibit B to Defendants' MSJ, Docket Entry No. 13-14, p. 1.  See also Docket Entry No. 91 in In re Iheakandu I. Emeka, Case No. 18-34322 in the United States Bankruptcy Court, Southern District of Texas, Exhibit 9 to Plaintiff's Petition, Docket Entry No. 1-1, p. 101.

this application does not represent a commitment that the Creditor will approve such an application."[12]   Plaintiff alleges that he submitted a complete Mortgage Assistance Application on June 1, 2020.[13]  Plaintiff alleges that after he agreed to dismiss his Chapter 13 bankruptcy case, Defendants failed or refused to provide him any written response to his application.[14]

On or about December 2, 2020, Carrington received Plaintiff's loss mitigation application for the Note, but the application was incomplete.[15]  On December 8, 2020, Carrington informed Plaintiff that it had "not receive[d] all of the required documentation and/or certain documents were dated more than 90 calendar days from the date of this notification."[16]  Carrington asked the Plaintiff to submit the requested documentation no later than December 23, 2020, warning that the "failure to submit all required

---

[12]Id. at 2.  See also Plaintiff's Petition, Docket Entry No. 1-1, pp. 10-11 ¶ 30 (describing negotiations for Agreed Bankruptcy Order in April of 2020); and Excerpts from attorney emails, Exhibit 12 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 118-24.

[13]Plaintiff's Petition, Docket Entry No. 1-1, p. 11 ¶ 30 (citing Mortgage Assistance Application, Exhibit 12 to Plaintiff's Petition, Docket Entry No. 1-1, pp. 125-29).

[14]Id. ¶ 31.

[15]Defendants' MSJ, Docket Entry No. 13, p. 4 & n. 10 (citing Account Notes, Exhibit A-4 to Defendants' MSJ, Docket Entry No. 13-5, p. 25).

[16]Id. & n. 11 (citing December 8, 2020, Incomplete Loss Mitigation Application Letter addressed to the Borrowers, Exhibit A-5 to Defendants' MSJ, Docket Entry No. 13-6, p. 2).

documentation by 12/23/2020 may result in ineligibility" for a loan modification, and referral to foreclosure.[17]

On January 25, 2021, Carrington mailed Plaintiff an additional notice stating that the loss mitigation application remained incomplete and instructing him to contact Carrington as soon as possible.[18]

On February 1, 2021, Plaintiff called Carrington, reported Sene deceased, and identified himself as the successor in interest to the Note secured by the Deed of Trust on the Property.[19]

On February 2, 2021, Carrington mailed Plaintiff a letter recognizing him as a potential successor in interest on the Note and asking him to provide documents to confirm that he was in fact a successor on the Note and Deed of Trust.[20]

---

[17]Id. (citing December 8, 2020, Incomplete Loss Mitigation Application Letter addressed to the Borrowers, Exhibit A-5 to Defendants' MSJ, Docket Entry No. 13-6, p. 2).

[18]Id. & n. 13 (citing Incomplete Loss Mitigation Application Letter addressed to Sene, Exhibit A-6 to Defendants' MSJ, Docket Entry No. 13-7, p. 2).

[19]Id. at 5 & n. 15 (citing Account Notes, Exhibit A-4 to Defendants' MSJ, Docket Entry No. 13-5, pp. 38-39).  See also Account Notes, Exhibit A-4 to Defendants' MSJ, Docket Entry No. 13-5, pp. 29 and 30 (stating that on December 17, 2020, and December 23, 2020, Plaintiff represented to Carrington that Sene was in Africa).

[20]Id. & n. 16 (citing Successor in Interest Acknowledgment — Documents Required, Exhibit A-8 to Defendants' MSJ, Docket Entry No. 13-9).

On February 17, 2021, Carrington canceled the loss mitigation application because it had not received all of the information needed to review the application.[21]

On March 3, 2021, Carrington mailed Plaintiff a second letter stating that it had "not received sufficient information in order to confirm that [he was] a successor in interest to Sene and reiterating its request for documentation.[22]  Plaintiff never provided Carrington the requested documentation to prove that he was a successor in interest on the Note and Deed of Trust.[23]

In June of 2021, Carrington sent a letter addressed to Sene at the Property stating that on July 1, 2021, the monthly payment would increase to $4,779.52.[24]

**B.   Procedural Background**

On September 21, 2021, Plaintiff filed a lawsuit in Fort Bend County District Court, asserting claims and allegations against Defendants like those asserted in this action, and seeking a

---

[21]Id. at 4 & n. 14 (citing Loss Mitigation Cancellation Notice addressed to Sene, Exhibit A-7 to Defendants' MSJ, Docket Entry No. 13-8, p. 2).

[22]Id. at 5 & n. 17 (citing Potential Successor in Interest Denial Letter, Exhibit A-9 to Defendants' MSJ, Docket Entry No. 13-10).

[23]Id.

[24]Plaintiff's Petition, Docket Entry No. 1-1, p. 11 ¶ 31 (citing Exhibit 13 to Plaintiff's Petition, Docket Entry No. 1-1, p. 131).

temporary restraining order and temporary injunction to stop a foreclosure on the Property.[25] The case was removed to the Southern District of Texas, Houston Division, and dismissed without prejudice on August 30, 2022.[26]

Although Plaintiff had previously reported Sene as deceased, Carrington received a Loss Mitigation Application signed by Sene and dated February 9, 2023.[27]

On August 21, 2023, Carrington conditionally approved Sene's Loss Mitigation Application and notified Sene that she may be eligible for a short sale or a deed-in-lieu of foreclosure.[28] But after Sene was unable to secure a buyer for the Property, Carrington denied her Loss Mitigation Application on December 18, 2023.[29]

---

[25]Id. & n. 19 (citing Chady Iheakandu I. Emeka v. Carrington Mortgage Services, LLC, et al., Case No. 21-DCV-286957, in the 400th District Court of Fort Bend County, Texas).

[26]Id. & n. 20 (citing Chady Iheakandu I. Emeka v. Carrington Mortgage Services, LLC, et al., Case No. 21-02993, in the Southern District of Texas, Houston Division (Stipulation of Dismissal, Docket Entry No. 20, and Order of Dismissal, Docket Entry No. 21)).

[27]Id. & n. 21 (citing Loss Mitigation Application, Exhibit A-10 to Defendants' MSJ, Docket Entry No. 13-11, p. 5)).

[28]Id. at 5-6 & n. 22 (citing Home Liquidation Notification, Exhibit A-11 to Defendants' MSJ, Docket Entry No. 13-12).

[29]Id. at 6 & n. 23 (citing Non-Approval Notification Short Sale/Short Payoff, Exhibit A-12 to Defendants' MSJ, Docket Entry No. 13-13).

Plaintiff filed this action on June 3, 2024, in the 434th District Court of Fort Bend County, Texas, Cause No. 24-DCV-316845,[30] and on June 20, 2024, Defendants removed it to this court (Docket Entry No. 1). Defendants filed the pending MSJ on May 13, 2025, and Plaintiff's response was due 21 days later.[31] Although over three months have passed since Defendants filed the pending MSJ, Plaintiff has not filed a response. Local Rule 7.4 states that "[f]ailure to respond to a motion will be taken as a representation of no opposition." S.D. Tex. L.R. 7.3 (2000). A district court may not grant summary judgment by default simply because there is no opposition to the motion. However, the court may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie showing of entitlement to judgment as a matter of law. See John v. State of Louisiana (Board of Trustees for State Colleges and Universities), 757 F.2d 698, 708 (5th Cir. 1985) (when the movant's evidence establishes its right to judgment as a matter of law, the district court is entitled to grant summary judgment absent unusual circumstances). See also Ramsay v. Bailey, 531 F.2d 706, 709 n. 2 (5th Cir. 1976)(per curiam), cert. denied, 97 S. Ct. 1139 (1977) (holding that a proper sanction for failure to respond

---

[30]Plaintiff's Petition, Docket Entry No. 1-1, p. 4.

[31]Under the Local Rules of the Southern District of Texas, a response to a motion is due 21 days after the motion is filed. S.D. Tex. L.R. 7.3 (2000).

to a dispositive motion is for the court to decide the motion on the papers before it). Therefore, in accordance with Local Rule 7.4, the court will take Plaintiff's failure to respond to the pending MSJ as a representation of no opposition to the factual assertions made in the motion.

## II. **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56. Factual disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A "party moving for summary judgment must demonstrate 'the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (en banc) (quoting Celotex, 106 S. Ct. at 2554). If the moving party meets this

burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis in the original)). "For any matter on which the non-movant would bear the burden of proof at trial . . . the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." Transamerica Insurance Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir. 1995) (per curiam). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III. Analysis

Defendants argue that they are entitled to summary judgment because Plaintiff's claims all fail as a matter of law.

### A. Applicable Law

"[F]ederal courts sitting in diversity apply the substantive law of the forum state, absent a federal statutory or constitutional directive to the contrary." <u>Salve Regina College v. Russell</u>, 111 S. Ct. 1217, 1218 (1991). Plaintiff cites Texas law in support of his claims,[32] and Defendants cite Texas law in support of their arguments for summary judgment.[33] Accordingly, the court concludes that Texas law applies to the claims asserted in this action.

### B. Application of the Law to the Undisputed Facts

1. <u>Defendants Are Entitled to Summary Judgment on Plaintiff's Breach of Contract Claims</u>

Plaintiff alleges that Defendants breached the Deed of Trust executed by the Borrowers by accelerating the Loan and posting the

---

[32]<u>See</u> Plaintiff's Petition, Docket Entry No. 1-1, p. 5 ¶ 7 (citing the Texas UDJA), and p. 17 ¶ 56 (citing Texas Civil Practice and Remedies Code § 37.001 <u>et seq.</u>).

[33]<u>See</u> Defendants' MSJ, Docket Entry No. 13, pp. 7-13 (citing Texas caselaw).

Property for foreclosure sale without providing him notice and an opportunity to cure.[34]

Defendants argue that they are entitled to summary judgment on Plaintiff's breach of contract claims because Plaintiff acknowledges that he is not a borrower on the Note, he did not execute the Deed of Trust, and he has no contractual relationship with the Defendants.[35]  Defendants argue that although Plaintiff asserts an ownership interest in the Property via a Special Warranty Deed executed by Sene on November 2, 2011, and recorded in the Official Records of Fort Bend County, Texas,[36] undisputed evidence shows that Plaintiff neither formally assumed the loan represented by the Note and the Deed of Trust securing repayment of the Note, nor provided documents to the Defendants showing that he is, in fact, a successor in interest to the Borrowers.[37]

"Whether a party has breached a contract is . . . governed by state law in diversity cases."  <u>Elmen Holdings, L.L.C. v. Martin</u>

---

[34]Plaintiff's Petition, Docket Entry No. 1-1, pp. 13-14 ¶¶ 39-42.

[35]Defendants' MSJ, Docket Entry No. 13, pp. 2, 7-8.

[36]<u>Id.</u> at 8 (citing Plaintiff's Petition, Docket Entry No. 1-1, p. 7 ¶ 18).  <u>See also</u> Special Warranty Deed, Exhibit 3 to Plaintiff's Petition, Docket Entry No. 1-1, p. 50 (filed and recorded in the records of Fort Bend County, Texas, on May 18, 2020).

[37]<u>Id.</u> & n. 26 (citing Successor in Interest Acknowledgment — Documents Required, Exhibit A-8, Docket Entry No. 13-9, and Potential Successor in Interest Denial Letter, Exhibit A-9, Docket Entry No. 13-10).

<u>Marietta Materials, Inc.</u>, 86 F.4th 667, 678 (5th Cir. 2023). "Where the evidence is undisputed regarding a person's conduct under a contract, the court alone must determine whether such conduct shows performance or a breach of a contractual obligation." <u>Id.</u> (citation omitted). "[A]s a general rule, only parties to a contract can sue to enforce it." <u>Southern Methodist University v. South Central Jurisdictional Conference of the United Methodist Church</u>, 716 S.W.3d 475, 489 (Tex. 2025) (citing <u>First Bank v. Brumitt</u>, 519 S.W.3d 95, 102 (Tex. 2017)). A "breach of contract claim, stemming from an alleged wrongful foreclosure and failure to modify a mortgage loan, fails if the plaintiff is not a party to the mortgage loan." <u>Cruz v. Compu-Link Corp.</u>, Civil Action No. 2:22-CV-00243, 2023 WL 4543584, at *5 (S.D. Tex. May 9, 2023) (citing <u>Kiper v. BAC Home Loans Servicing, LP</u>, 884 F. Supp. 2d 561, 572 (S.D. Tex. 2012), <u>aff'd</u>, 534 F. App'x 266 (5th Cir. 2013) ("breach of contract claim failed because, while plaintiff's wife was named in the loan agreement, plaintiff himself was 'not a party to either the mortgage loan or the loan modification agreement'")). Owners who have purchased mortgaged property from a borrower, but who have not assumed the mortgage loan do not have standing to sue for breach of the underlying documents if they are not party to the original loan contracts. <u>See</u> <u>Cruz</u>, 2023 WL 4543584, at * 5 (holding that borrower's heir who resided in property had no standing to sue for breach of loan documents).

Because the summary judgment evidence shows undisputedly that Plaintiff was not a party to the Note or the Deed of Trust that he alleges Defendants breached, he lacks standing to assert breach of contract claims against the Defendants. Id. The court concludes, therefore, that Defendants are entitled to summary judgment on Plaintiff's breach of contract claims.

### 2. Defendants Are Entitled to Summary Judgment on Plaintiff's Promissory Estoppel Claims

Plaintiff alleges that

Defendant Carrington's bankruptcy attorney and Plaintiff's bankruptcy attorney reached an agreement via email on or about May 2020, wherein Defendant Carrington promised that Plaintiff would be allowed to assume and modify the loan and agreed to specific application of the thousands of dollars in Chapter 13 Trustee payments and direct payments made by Plaintiff to Defendant Carrington in each bankruptcy case, and Plaintiff fully performed under that agreement and actually tendered the payments and the mortgage assistance application, and Defendant Carrington thereafter refused to provide Plaintiff with any information, and wholly failed to ever offer Plaintiff any loan modification or even provide any type of written acknowledgment of the same as promised, and Plaintiff's reliance upon that promise was reasonable, substantial, foreseeable and detrimental, and as a result Plaintiff has sustained and incurred damages in excess of the minimum jurisdictional limits of this Court.[38]

Defendants argue that they are entitled to summary judgment on Plaintiff's promissory estoppel claims because those claims are directly contradicted by the Agreed Bankruptcy Order entered in the bankruptcy court.[39] Defendants argue that

---

[38]Plaintiff's Petition, Docket Entry No. 1-1, pp. 14-15 ¶ 45.

[39]Defendants' MSJ, Docket Entry No. 13, pp. 2, 8-10.

> Plaintiff asserts a promissory estoppel claim in connection with his allegation that Defendants, in the Agreed Order, "promised that Plaintiff would be allowed to assume and modify the loan." This claim is barred as a matter of law because the doctrine of promissory estoppel "presumes no contract exits." <u>Subaru of America, Inc. v. David McDavid Nissan, Inc.</u>, 84 S.W.3d 212, 226 (Tex. 2002). Thus, if a valid contract exists covering the alleged promise, Plaintiff cannot recover under a promissory estoppel theory. <u>Id.</u>[40]

In <u>Subaru</u> the Texas Supreme Court acknowledged that "the promissory-estoppel doctrine presumes no contract exists." <u>Id.</u> (citing <u>Wheeler v. White</u>, 398 S.W.2d 93, 96-97 (Tex. 1965)).

Because Plaintiff's promissory estoppel claims are based on agreements made in the bankruptcy proceeding that were incorporated into the Agreed Bankruptcy Order, and because Plaintiff does not allege that the Agreed Bankruptcy Order is an invalid agreement, Defendants are entitled to summary judgment on his promissory estoppel claims because the promises at issue are the subject of a written contract. Moreover, the Agreed Bankruptcy Order stated that the Debtor would be allowed to submit an application for a loan modification agreement, but warned that "[a]cceptance of the submission of this application does not represent a commitment that the Creditor will approve such an application."[41] Therefore, the Agreed Bankruptcy Order expressly contradicts Plaintiff's allegations that Carrington promised he would be allowed to assume the Borrowers' loan.

---

[40]<u>Id.</u> at 9-10.

[41]Agreed Order on Debtor's Objection to Proof of Claim and Motion for Sanctions Pursuant to Bankruptcy Rule 3002.1, Exhibit B to Defendants' MSJ, Docket Entry No. 13-14, p. 1.

3.  <u>Defendants Are Entitled to Summary Judgment on Plaintiff's RESPA and Regulation X Claims</u>

Plaintiff alleges that

[t]he acts, conduct and/or omissions of Defendant Carrington, which at all material times hereto was acting in its alleged capacity as "mortgage servicer" of Plaintiff's mortgage loan on behalf of Defendant Wells Fargo, also constitute violations of RESPA and Regulation X of the Code of Federal Regulations established by the Consumer Financial Protection Bureau, 12 C.F.R. § 1024.41 <u>et seq.</u>, which became effective January 10, 2014, because Defendant Carrington committed violations of this statute and those statutory violations are a producing cause of the actual damages sustained and incurred by Plaintiff . . .

. . .

Defendant Carrington's acts, conduct and/or omissions of failing, neglecting or refusing to provide Plaintiff with any definitive assessment and confirmation that Plaintiff's mortgage assistance and loan modification application had been reviewed or denied, nor provide any written explanation or valid reasons why it had been denied, especially given the agreement reached between bankruptcy counsel for both Plaintiff and Defendant Carrington, and of instead proceeding to accelerate the loan and post Plaintiff's homestead property for foreclosure sale each constitute violations of Regulation X and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.[42]

Defendants argue that they are entitled to summary judgment on Plaintiff's claims for violation of RESPA and Regulation X because he is not the borrower, and, alternatively, because Plaintiff's RESPA and Regulation X claims are time barred, and because Plaintiff failed to submit a complete Loss Mitigation Application.[43]

---

[42]Plaintiff's Petition, Docket Entry No. 1-1, pp. 14-15 ¶¶ 48 and 51.

[43]Defendants' MSJ, Docket Entry No. 13, pp. 2, 10-14.

"RESPA is a consumer protection statute that aims to promote transparency and communication between <u>borrowers</u> and lenders." <u>Cruz</u>, 2023 WL 4543584, at *7 n. 8.

> Among other things, the statute sets out specific notice and disclosure requirements with which servicers of federally-related mortgage loans must comply . . . Servicers who fail to comply with these requirements are liable to <u>borrowers</u> for any actual damages incurred by the <u>borrowers</u> because of such failure. . . Thus, "pursuant to the express language of [RESPA] . . . a defendant's liability is limited to 'borrowers[,]' . . . that is[,] a person who signed the promissory note or assumed the loan. . . An individual who does not sign a promissory note does not qualify as a borrower for purposes of [RESPA]." . . . "<u>Not even a successor in interest to a deceased borrower has standing to bring RESPA claims where the successor in interest did not sign a promissory note.</u>"

<u>Id.</u> (quoting <u>Lackie v. PHH Mortgage Corp.</u> No. 3:17-CV-377-BT, 2018 WL 4409799, at *2 (N.D. Tex. September 17, 2018)) (emphasis in original).  Courts construe the term "borrower" in RESPA to mean those who signed the note or formally assumed the loan.  <u>See</u> <u>Broussard v. Specialized Loan Servicing, LLC</u>, No. H-18-2415, 2019 WL 13254589, at *2 (S.D. Tex. April 18, 2019).  "Under RESPA, once a servicer receives a borrower's complete loss mitigation application, the former cannot foreclose before notifying the latter of its loss mitigation ineligibility."  <u>Forscht v. Select Portfolio Servicing, Inc.</u>, Civil Action No. H-17-2659, 2018 WL 1757610, at *2 (S.D. Tex. April 12, 2018) (citing 12 C.F.R. § 1024.41(f)(2)(I)).  The statute of limitation for RESPA claims is from one (1) to three (3) years depending on the type of violation

alleged. 12 U.S.C. § 2614. <u>See also</u> <u>Nesbitt v. Wells Fargo Bank,</u>
<u>N.A.</u>, Civil Action No. 4:22-CV-1479, 2023 WL 4238513, at * 4 (S.D.
Tex. June 8, 2023). Regulation X implements RESPA. <u>Id.</u> <u>See also</u>
12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of
this section pursuant to section 6(f) of RESPA (12 U.S.C.
2605(f)).").

Because the summary judgment evidence undisputedly shows that
Plaintiff neither signed the Note or Deed of Trust securing
repayment of the Note, nor formally assumed the Borrowers' loan
and, therefore, is not a "borrower" for purposes of RESPA,
Plaintiff lacks standing to assert RESPA or Regulation X claims
against the Defendants. Because the summary judgment record shows
that Plaintiff submitted a loan modification application on June 1,
2020, but did not file this action until June 20, 2024, any claim
that Plaintiff is attempting to asserted based on Defendants'
failure to approve that application is time-barred by RESPA's one
to three-year statute of limitations. Because the summary judgment
record shows that Sene submitted a Loss Mitigation Application less
than three years before this action was filed, Plaintiff is unable
to pursue a claim based on Defendants' failure to approve that
application because it was not submitted by or for Plaintiff and it
was never completed. The court concludes, therefore, that
Defendants are entitled to summary judgment on Plaintiff's RESPA
and Regulation X claims.

4.    Defendants Are Entitled to Summary Judgment on
Plaintiff's Claims for Declaratory and Injunctive Relief

Plaintiff seeks declaratory and injunctive relief pursuant to
Texas' UDJA to prevent Defendants from foreclosing on the Property
known as 6806 Flowermound Drive, Sugar Land, Fort Bend County,
Texas, 77479.[44] Defendants argue that they are entitled to summary
judgment on Plaintiff's claims for declaratory and injunctive
relief because he has failed to assert a viable substantive cause
of action.

"Declaratory and injunctive relief are procedural devices
only; they fail unless tied to a viable cause of action." Zapara
v. Citimortgage, Inc., Civil Action No. SA-16-CV-026-XR, 2016 WL
844837, at *3 (W.D. Tex. March 1, 2016) (citing Aetna Life
Insurance Co. of Hartford, Connecticut v. Haworth, 57 S. Ct. 461,
463 (1937) ("The operation of the Declaratory Judgment Act is
procedural only."); and Pajooh v. Harmon, 82 F. App'x 898, 899 (5th
Cir. 2003) (per curiam), cert. denied, 124 S. Ct. 2188 (2004)
(affirming district court's denial of injunctive relief when
plaintiff failed to state a claim)).  See also Sid Richardson
Carbon & Gasoline Co. v. Interenergy Resources, Ltd., 99 F.3d 746,
752 n. 3 (5th Cir. 1996) ("The Texas Uniform Declaratory Judgment
Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 et seq. is merely a
procedural device; it does not create any substantive rights or

_____

[44]Plaintiff's Petition, Docket Entry No. 1-1, pp. 5 ¶ 7, 16-18
¶¶ 53-55, and § XII (Prayer).

causes of action."). Because the court has already concluded that Defendants are entitled to summary judgment on each substantive cause of action asserted by Plaintiff, Defendants are also entitled to summary judgment on Plaintiff's claims for declaratory and injunctive relief. See, Daigle v. AmeriHome Mortgage Co., LLC, Civil Action No. 3:22-cv-00133, 2023 WL 8373179, at *4 (S.D. Tex. December 4, 2023).

## IV. Conclusions and Order

For the reasons stated in § III, above, the court has concluded that Plaintiff is unable to maintain claims against the Defendants for breach of contract, promissory estoppel, and violation of RESPA and Regulation X, and therefore, that Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.

Accordingly, Defendants' Motion for Summary Judgment, Docket Entry No. 13, is **GRANTED**.

**SIGNED** at Houston, Texas, this 26th day of August, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE